UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00333-RJC-DSC

| | |
|---|---|
| JESUS GUERRERO et al., on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | **Order** |
| ) | |
| BANK OF AMERICA N.A., ) ) | |
| Defendant. ) ) | |

**THIS MATTER** is before the Court on Bank of America's Motion to Dismiss or Stay (Doc. No. 31), its Motion to Strike (Doc. No. 32), and the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 38). For the reasons below, the M&R is **ADOPTED in part**, the Motion to Dismiss or Stay is **GRANTED in part** and **DENIED in part**, and the Motion to Strike is **DENIED**.

I.     BACKGROUND[1]

In this putative class action, cardholders with Bank of America claim that the bank used inflated currency-exchange rates to calculate their charges for foreign transactions. Am. Compl. ¶ 12, Doc. No. 29. While Visa and Mastercard selected the rates, the cardholders allege that Bank of America is responsible for their selections. *Id.* ¶ 15. According to the cardholders, the higher rates led to excessive charges for them but resulted in greater profits for the bank and credit card companies. *Id.* ¶¶ 23–24.

Contending that the higher rates violated their contracts with Bank of America, the

---

[1] No party objects to the M&R's description of the factual and procedural background of this case. Accordingly, the Court adopts that description. In this order, the Court sets out only the facts that are relevant to the issues presented.

cardholders assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing. In the alternative, and under a quasi-contractual theory, they claim that the bank was unjustly enriched by the higher rates. And looking to state consumer-protection statutes, they argue that Bank of America violated the North Carolina Unfair and Deceptive Trade Practices Act, the Texas Deceptive Trade Practices Act, and the California Unfair Competition Law.[2]

Bank of America moved to dismiss those claims under Federal Rules of Civil Procedure 8(a)(2), 12(b)(1), and 12(b)(6). Def.'s Mot. Dismiss or Stay 1, Doc. No. 31. It first argues that the named Plaintiffs, who used only Visa debit and credit cards, lack standing to bring class claims related to two other types of cards: prepaid cards and cards issued by Mastercard. Def.'s Mem. Supp. Mot. Dismiss or Stay 1–2, Doc. No. 31-1. Contending that the contractual language identified by the cardholders is merely explanatory, the bank also denies any contractual responsibility for the currency-exchange rates applied by Visa and Mastercard. *Id.* at 12–13. Pivoting, it then argues that, since the cardholders *claim* that it owes them a contractual duty, they cannot assert an unjust-enrichment claim based on a quasi-contractual theory, even in the alternative. *Id.* at 16–17. The bank contends that the good-faith-and-fair-dealing claim should be dismissed because it is based on express contractual terms, not an implied covenant, and it further challenges the sufficiency of the cardholders' bad-faith allegations. *Id.* at 18.

Bank of America disputes the cardholders' consumer-protection claims on several grounds. The cardholders purportedly fail to allege three things in support of their North

---

[2] All the named Plaintiffs assert the North Carolina claim on behalf of all the class members. Am. Compl. at 33, Doc. No. 29. Only the two named Plaintiffs from California assert the California claim, Am. Compl. at 25, 37, and the Texas claim is asserted by the one named Plaintiff from Texas, Am. Compl. at 40. The named Plaintiffs from California and Texas also assert these claims on behalf of the class members from their states. Am. Compl. at 37, 40.

2

Carolina claim: egregious or aggravating circumstances, reliance on the bank's allegedly false representations, and a substantial effect in North Carolina. *Id.* at 19–21. The equitable California claim fails because, Bank of America argues, the California cardholders cannot pursue equitable relief as an alternative to the damages they seek. *Id.* at 21–22. Even if they could, the bank contends that the cardholders fail to show that its conduct was unfair, fraudulent, or unlawful. *Id.* at 22–23. And it attacks the Texas claim on the grounds that the Texas cardholder is not a consumer under the state's consumer-protection statute. *Id.* at 23–24.

In lieu of dismissal, Bank of America seeks a stay while similar litigation proceeds against Visa and Mastercard. Def.'s Mot. Dismiss or Stay 1. It also moved to strike the cardholders' unjust-enrichment claim, arguing that the claim's allegedly elaborate choice-of-law implications make it unfit for class certification under Federal Rule of Civil Procedure 23. Def.'s Mem. Supp. Mot. Strike 1, Doc. No. 32-1.

The M&R concludes that the Motion to Dismiss should be partly granted and partly denied. Recognizing that some courts in the Fourth Circuit assess only the class representatives' individual standing, the M&R, after finding that the named plaintiffs have standing, recommends leaving questions about the suitability of their representation for the class-certification stage. M&R 7–8, Doc. No. 38. The M&R also concludes that the cardholders plausibly allege that Bank of America contracted to ensure the application of certain currency-exchange rates, so it recommends against dismissing the breach-of-contract claim. *Id.* at 9–11. But based on that contractual obligation, it recommends dismissing the quasi-contractual unjust-enrichment claim. *Id.* at 11–12. Similarly, the M&R states that the relevant contracts' express terms foreclose the good-faith-and-fair-dealing claim. *Id.* at 13–14. Since it recommends dismissing the unjust-enrichment claim, the M&R also recommends denying the Motion to Strike as moot. *Id.* at 12.

Concluding that the Texas cardholder plausibly pleads that she is a consumer under Texas law, the M&R says that the Texas claim should survive, *id.* at 18–19, but it states that the other two consumer-protection claims should be dismissed. It concludes that the North Carolina claim lacks sufficient allegations of substantial aggravating circumstances, and it sees that claim as a mere copy of the one for breach of contract. *Id.* at 14–16. Again relying on the presence of a contractual obligation that could entitle the cardholders to damages, the M&R recommends dismissing the equitable California claim, which could afford relief only in the absence of a legal remedy. *Id.* at 17. In any event, the M&R concludes that the cardholders failed to properly plead a request for equitable relief. *Id.* at 18. Finally, seeing little risk that Bank of America will suffer undue hardship, the M&R recommends denying the bank's request for a stay. *Id.* at 19–20.

Both sides object. The California cardholders insist that, at this early stage, they can seek legal and equitable relief simultaneously. Pls.' Objs. M&R 5–8, Doc. No. 39. All the cardholders say essentially the same thing about their unjust-enrichment claim, pointing out that their entitlement to legal relief is contested since Bank of America denies any contractual duty to oversee Visa's and Mastercard's selection of currency-exchange rates. *Id.* at 8–9. The cardholders contend that Bank of America's alleged misrepresentations constitute egregious or aggravating circumstances sufficient to support their North Carolina claim, and they deny any need to plead reliance on those misrepresentations, though they say they pleaded such reliance anyway. *Id.* at 10–11. They also contest the M&R's conclusion that their North Carolina claim is only a copy of their breach-of-contract claim, arguing that Bank of America's alleged conduct constituted not only a contractual breach but also unfair market activity. *Id.* at 11–12. As for their good-faith-and-fair-dealing claim, the cardholders contend that the express terms of their contracts do not exclude the terms they seek to imply. *Id.* at 13–14.

In its Objections, Bank of America challenges the Texas claim on three new grounds. It first argues that the Texas claim is based on a bare breach of contract, which is not a deceptive trade practice under Texas law. Def.'s Objs. M&R 11–12, Doc. No. 40. Nor, according to the bank, does the alleged contractual breach amount to an unconscionable act. *Id.* at 13. The claim is further precluded, the bank argues, because the Texas cardholder failed to allege that she detrimentally relied on the bank's purported misrepresentations about currency-exchange rates. *Id.* at 12. Besides these three grounds, the bank continues to dispute the Texas cardholder's status as a consumer. *Id.* at 13–15. It again contends that the breach-of-contract claim partly fails because the cardholders lack standing to assert claims relating to prepaid cards or cards issued by Mastercard, and it insists that these issues should be resolved now, not at the class-certification stage. *Id.* at 15–18. Challenging the breach-of-contract claim more generally, the bank maintains that it is not contractually obligated to supervise the credit card companies' selection of currency-exchange rates. *Id.* at 18–20. And it contends that the cardholders' claims are impermissibly indefinite, pointing out that the cardholders are silent on several details, like the rates that were applied to their transactions, the dates and amounts of some transactions, and the range of permissible rates. *Id.* at 22. The bank also challenges the cardholders' fallback positions, arguing that their contracts do not incorporate any obligation-creating terms and denying that the credit card companies acted as the bank's agents when they chose the currency-exchange rates. *Id.* at 21–22. Finally, Bank of America repeats its claim that this case should be stayed while the litigation against Visa and Mastercard plays out. *Id.* at 23.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A), (B). The Federal Magistrate Act provides that a district court "shall make a de

5

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss is well known. A motion to dismiss brought under Rule 12(b)(6) "'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked under Rule 12(b)(6) will survive if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, and the statement need

6

only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration omitted). Additionally, when ruling on a motion to dismiss, a court "should view the complaint in a light most favorable to the plaintiff," *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and it must accept the complaint's factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And at the motion-to-dismiss stage, "[c]ourts cannot weigh the facts or assess the evidence," though "a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014) (emphasis omitted).

## III. DISCUSSION

### A. Article III Standing

To establish Article III standing, a plaintiff must show an injury in fact, fairly traceable causation, and judicial redressability. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992). At the motion-to-dismiss stage, defendants in class actions sometimes argue, under the injury-in-fact prong, that a named plaintiff lacks standing to represent class members who suffered an injury that is somewhat different from the named plaintiff's injury. *See, e.g.*, *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 319 (D. Md. 2021). Bank of America makes that argument here. But most jurisdictions, and some courts in the Fourth Circuit, have adopted the class-certification approach, under which "an action [may] proceed once the named plaintiff demonstrates her individual standing to bring a claim." *Id.* The standing inquiry concludes once that showing is made, and questions about the named plaintiff's representative capacity are left for the class-certification stage. *Id.*; *see also* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 2:6 (6th ed. December 2022

7

update) ("[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class.").

The named plaintiffs have individual standing.[3] Adopting the class-certification approach, the Court will analyze their ability to represent the class at the class-certification stage.

B.     **Breach of Contract**

The cardholders plead a plausible breach-of-contract claim. To state that claim, a plaintiff must plead the existence and breach of a contract. *See Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). And at the motion-to-dismiss stage, a plaintiff's allegations must "state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Developing several legal theories, the cardholders argue that Bank of America is responsible for the currency-exchange rates. They first invoke their agreements with the bank. Pls.' Mem. Opp'n Mot. Dismiss or Stay 9, Doc. No. 34; Am. Compl. ¶ 88. Those agreements say that the cardholders' foreign currency "will be converted by Visa International or MasterCard International," specifying that "the currency conversion rate to be used is either (1) a wholesale market rate or (2) a government-mandated rate." Am. Compl. ¶ 54. This language, while perhaps only "explanatory" as Bank of America claims, Def.'s Mem. Supp. Mot. Dismiss or Stay 12,

---

[3] Bank of America submitted supplemental authority in an attempt to question the named plaintiffs' individual standing. *See* Doc. Nos. 43, 47 (describing judicial decisions that found a lack of standing on the grounds that the plaintiffs' allegations provided too little detail about their alleged injuries). But the named plaintiffs sufficiently allege that they suffered financial harms because of the bank's purportedly inflated charges. And to redress those alleged harms, they ask for traditional remedies: monetary damages and equitable relief. The cardholders need not prove their entire case to show standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . .").

8

Case 3:21-cv-00333-RJC-DSC   Document 51   Filed 03/30/23   Page 8 of 16

Doc. No. 31-1, could also be plausibly construed as imposing an obligation on the bank.[4]

To satisfy the breach element, the cardholders describe several times when Bank of America allegedly used an inflated rate to calculate their charges. *See* Am. Compl. ¶ 29 (describing Guerrero's pesos-to-dollars transaction); ¶ 30 (describing Young's pounds-to-dollars transaction); ¶ 31 (describing Blake's euros-to-dollars transaction); ¶ 32 (describing McDonald's transaction using Canadian dollars). Bank of America claims that the cardholders must provide even more information, such as details about the range of permissible rates and specifics about the rates that it applied to each transaction. Def.'s Objs. M&R 22, Doc. No. 40. But the cardholders need only provide "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, while the bank challenged the factual sufficiency of these allegations in its Objections, it failed to do so in its Motion to Dismiss, so the argument is waived. *See Relion Mfg., Inc. v. Tri-Pac, Inc.*, 2019 WL 990448, at *1 (W.D.N.C. Mar. 1, 2019) (stating that a party "cannot use its objections to the Memorandum and Recommendation as a platform to raise new issues it never asserted in its Rule 12(b)(6) motion"); *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 620 (D.S.C. 2017) ("[T]he court need not decide this issue as defendant waived the argument by failing to raise it before the magistrate judge.").

### C. Unjust Enrichment

The cardholders successfully plead an unjust-enrichment claim, which they assert as an

---

[4] Bank of America argues that a document called the "Deposit Agreement and Disclosures," which contains a liability disclaimer, is incorporated into the agreements governing the cardholders' debit-card transactions. Def.'s Objs. M&R 22, Doc. No. 40; *see* Deposit Agreement and Disclosures, Doc. No. 31-7. But that document was not attached to the Amended Complaint, nor was it "integral to and explicitly relied on in the complaint," *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), so it cannot be considered when deciding the bank's motion to dismiss. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 608 n.2 (4th Cir. 2020).

alternative to their breach-of-contract claim. A plaintiff can maintain a claim for unjust enrichment only "in the absence of an enforceable contract." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 810 (E.D. Va. 2017). But when "the applicability or enforceability of the contract is in dispute," a plaintiff "may assert alternative claims for unjust enrichment and breach of contract." *Id.*; *see* Fed. R. Civ. P. 8(a)(3) (explaining that a party may seek "relief in the alternative or different types of relief").

Bank of America disputes the applicability of its agreements with the cardholders. While it recognizes the general existence of those agreements, it denies the cardholders' key contractual contention: that the agreements make the bank responsible for the currency-exchange rates chosen by the credit card companies. *See* Def.'s Mem. Supp. Mot. Dismiss or Stay 12, Doc. No. 31-1 ("[T]his explanatory language does not contain a legally enforceable obligation owed *by BANA* [Bank of America] with respect to the conversion of currency."). Bank of America thus denies that "*the conduct at issue* is governed by an express contract between the parties." *MedShift, LLC v. Charles W. Morgan Pelle, LLC*, 584 F. Supp. 3d 112, 129 (W.D.N.C. 2022) (emphasis added). Therefore, although the cardholders "cannot recover for breach of contract and unjust enrichment," they are "allowed to plead these inconsistent theories." *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 826 (E.D. Va. 2013).[5]

The bank contends that the cardholders fail to plead one element of an unjust-enrichment claim: a conferred benefit. Def.'s Mem. Supp. Mot. Dismiss or Stay 17, Doc. No. 31-1; Def.'s Resp. Opp'n Pls.' Objs. 6, Doc. No. 41; *see Se. Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 206 (N.C. Ct. App. 2002) (listing the elements of an unjust-enrichment claim). But the cardholders

---

[5] At this stage, the Court concludes only that the cardholders successfully plead a breach-of-contract claim. It does not conclude, on the merits, that Bank of America is contractually responsible for the currency-exchange rates. Lacking certainty about the bank's responsibilities under the contracts, it is too early to dismiss the cardholders' unjust-enrichment claim.

10

allege that they "pa[id] more" money to Bank of America because of the allegedly inflated currency-exchange rates, allowing the bank to "maximize[] its profits." Am. Compl. ¶¶ 29–32; *see also id.* ¶¶ 102–103. That allegation sufficiently identifies an alleged benefit to the bank.

### D. The Implied Covenant of Good Faith and Fair Dealing

The cardholders fail to plead a claim based on the implied covenant of good faith and fair dealing. That covenant is implied in every contract. *Nadendla v. WakeMed*, 24 F.4th 299, 307 (4th Cir. 2022); *see also Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 253 S.E.2d 625, 627 (N.C. 1979) ("It is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement."). A plaintiff may base a claim on it when "the implied duty is not contrary to an express provision of the contract." *Nadendla*, 24 F.4th at 308.

Here, the cardholders try to imply a duty that contradicts their agreements' express terms. Invoking those terms, they argue that their agreements required Bank of America to charge wholesale market rates. Mem. Opp'n Mot. Dismiss or Stay 1, Doc. No. 34. They then argue that, under the implied covenant, the bank could not charge *certain* wholesale market rates. *Id.* at 16. But the agreements expressly allowed the bank to charge "a wholesale market rate" without qualification, Am. Compl. ¶ 54, and the cardholders cannot claim that the bank impliedly violated the agreements by doing something that it was explicitly allowed to do. *See Dillon v. Leazer Group, Inc.*, 374 F. Supp. 3d 547, 556 (E.D.N.C. 2019) ("[A]n asserted implied term cannot be used to contradict the express terms of a contract.").

### E. The North Carolina UDTPA Claim

The cardholders fail to plead a viable claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). *See* N.C. Gen. Stat. § 75-1.1. To state such a claim, a plaintiff must allege that the defendant committed an unfair or deceptive act that affected

11

commerce and proximately caused an injury to the plaintiff. *CS Tech., Inc. v. Horizon River Tech., LLC*, 2020 WL 4546436, at *9 (W.D.N.C. Aug. 6, 2020); *see also Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007). However, a bare breach of contract "is not sufficiently unfair or deceptive." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998). Thus, when an alleged breach of contract is involved, the plaintiff must either plead a UDTPA claim "separate and apart from a breach of contract claim" or base the UDTPA claim on "a breach of contract accompanied by substantial aggravating circumstances." *Suntrust Bank v. Bryant/Stutphin Props.*, 732 S.E.2d 594, 599 (N.C. Ct. App. 2012) (internal quotation marks and alteration omitted). Here, the cardholders fail to make either showing.

The UDTPA claim is not independent of the breach-of-contract claim. The cardholders do not plausibly allege that there is anything inherently deceptive or unfair about the rates that Bank of America charged. Rather, the cardholders complain about the rates charged by the bank because the rates allegedly exceed the range of rates specified by the cardholders' agreements. *See* Am. Compl. ¶ 91 ("[B]y imposing Processor-selected rates that were higher than those authorized under the Cardholder Agreements, Bank of America breached its agreements with Plaintiffs and members of the Nationwide Class."). Thus, the alleged contractual breach forms the basis of the plaintiff's UDTPA claim. "Given the contractual center of this dispute," the UTPA claim is "out of place." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998).

Nor are there any substantial aggravating circumstances. The cardholders try to show such circumstances by arguing that the bank "made false representations about its [currency-conversion] rate procedures at the time of contract formation." Pls.' Mem. Opp'n Mot. Dismiss

12

or Stay 19. But the cardholders fail to plead that they relied on such false representations. *See Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (explaining that a UDTPA claim that "stem[s] from an alleged misrepresentation" requires "a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause"). They do not allege that their agreements with Bank of America were "induced by [the bank's] promise[s]" about the currency-conversion procedures. *Mapp v. Toyota World, Inc.*, 344 S.E.2d 297, 301 (N.C. Ct. App. 1986). Nor do they plead that the bank's alleged "false representations" made "at the time of contract formation" induced them to pay the charges they received from Bank of America. Pls.' Mem. Opp'n Mot. Dismiss or Stay 19. Indeed, they fail to claim that they even read the agreements. Accordingly, "[t]here is nothing so oppressive or overreaching about [the bank's] behavior in [allegedly] breaching the contract[s] that would transform the case into one for an unfair trade practice." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 599 (N.C. Ct. App. 2015).

### F. The Texas DTPA Claim

The Texas cardholder does not state a claim under the Texas Deceptive Trade Practices Act ("DTPA"). That statute gives "consumer[s]" a cause of action when they are damaged by "unconscionable action[s]" or by certain "false, misleading, or deceptive act[s]." Tex. Bus. & Com. Code Ann. § 17.50. Like in North Carolina, "a simple breach of contract is not contemplated as a deceptive trade practice under the Texas DTPA." *Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 675 F.2d 745, 756 (5th Cir. 1982); *see also Ashford Dev., Inc. v. USLife Real Est. Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983) ("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."). Another similarity: the DTPA also requires the cardholders to allege reliance. *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 & n.26 (Tex. 2002); Tex.

13

Bus. & Com. Code Ann. § 17.50(a)(1)(B). Thus, the Texas cardholder fails to plead a Texas DTPA claim for the same reasons that the cardholders fail to plead a North Carolina UDTPA claim.

### G. The California UCL Claim

The California cardholders fail to state a claim under the California Unfair Competition Law ("UCL"). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Like in North Carolina and Texas, "a breach of contract claim cannot form the basis for a UCL claim without additional unlawful, unfair, or fraudulent conduct." *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010); *see also Puentes v. Wells Fargo Home Mortg., Inc.*, 72 Cal. Rptr. 3d 903, 909 (Cal. Ct. App. 2008) ("A breach of contract may form the predicate for Section 17200 claims, *provided it also constitutes conduct that is unlawful, or unfair, or fraudulent*." (alterations and internal quotation marks omitted)). Additionally, "[t]o bring a claim under California's Unfair Competition Law," plaintiffs must "plausibly allege[] detrimental reliance." *McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 786 (9th Cir. 2018); *see also Ellis v. J.P. Morgan Chase & Co.*, 2016 WL 5815733, at *8 (N.D. Cal. Oct. 5, 2016) ("To prevail on [a] . . . fraud-based UCL claim, plaintiffs must establish detrimental reliance . . . ."). Therefore, the California UCL claim fails for the same reasons that doom the claims brought under the North Carolina UDTPA and the Texas DTPA.

### H. The Motion to Strike

Bank of America moved to strike the cardholders' unjust-enrichment claim, contending that it cannot satisfy Rule 23's typicality, commonality, and predominance requirements. Def.'s Mem. Supp. Mot. Strike 1, Doc. No. 32-1. The bank argues that, to determine the governing law, the Court would have to engage in an "extensive choice-of-law analysis" that would "require

14

individualized inquiries into each putative class member's circumstances." *Id.* But courts "rarely make a class determination at the pleading stage." *Bigelow v. Syneos Health, LLC*, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020); *see also Abdur-Rahman v. Wells Fargo Bank N.A.*, 2022 WL 481788, at *3 (W.D.N.C. Feb. 16, 2022) ("Generally, courts do not strike or dismiss class allegations at the pleadings stage but instead allow for pre-certification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1)."). And here, the choice-of-law issue raises factual questions that cannot be answered without discovery. So it is not "clear from the face of the complaint" that the cardholders "cannot and could not meet [Rule] 23's requirements for certification." *Letart v. Union Carbide Corp.*, 2020 WL 2949781, at *3 (S.D.W. Va. June 3, 2020). Accordingly, the Court will determine the unjust-enrichment claim's fitness for class certification once the factual record is sufficiently developed.

I. **The Motion to Stay**

As an alternative to dismissal, Bank of America asks for a stay. Def.'s Mot. Dismiss or Stay 1, Doc. No. 31. It claims that it is suffering "hardship and inequity" because it has to litigate issues here that are similar to the ones being litigated by Visa and Mastercard in two other cases. Def.'s Objs. M&R 23, Doc. No. 40. But the bank does not indicate that it is a party in those two cases, so it has not shown than it is enduring the burden of litigating multiple cases simultaneously. Nor is it likely that the other cases will decide one of the key issues here: whether Bank of America is responsible for the currency-exchange rates that were applied to the cardholders' transactions. And the ordinary "burden" of "proceeding with discovery and related briefing" does not outweigh the harm that the cardholders would suffer if they were deprived of their ability to determine the bank's liability. Def.'s Objs. M&R 25; *see Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (requiring courts to analyze whether "clear and convincing circumstances outweigh[] [the] potential harm to the party against whom [the

15

stay] is operative"). Besides, in its two Notices of Supplemental Authority, Bank of America notified the Court that the defendants' motions to dismiss were granted in the Visa and Mastercard cases. Doc. Nos. 43, 47. Considering all this, the bank has not shown that "clear and convincing circumstances" justify a stay. *Williford*, 715 F.2d at 127.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The M&R (Doc. No. 38) is **ADOPTED in part**. Specifically, the M&R is **NOT ADOPTED** as to the Plaintiffs' unjust-enrichment claim or Texas DTPA claim. The M&R is also **NOT ADOPTED** as to the Defendant's Motion to Strike. It is otherwise **ADOPTED**.

2. The Defendant's Motion to Dismiss or Stay (Doc. No. 31) is **GRANTED in part** and **DENIED in part**. Specifically, the Motion is **GRANTED** as to the Plaintiffs' North Carolina UDTPA claim, Texas DTPA claim, California UCL claim, and claim for breach of the implied covenant of good faith and fair dealing. The Motion is otherwise **DENIED**.

3. The Defendant's Motion to Strike (Doc. No. 32) is **DENIED**.

Robert J. Conrad, Jr.
United States District Judge